1

2

3

# UNITED STATES DISTRICT COURT

4

## NORTHERN DISTRICT OF NEW YORK

5

6

**RONALD JANTZER, on behalf of himself and all others similarly situated,**

**CASE NO.:**  8:19-cv-791 (BKS/DJS)

7

8

**Plaintiff**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**

9

**v.**

10

**ELIZABETHTOWN COMMUNITY HOSPITAL and UNIVERSITY OF VERMONT HEALTH NETWORK INC.,**

**DEMAND FOR JURY TRIAL**

11

12

13

**Defendants.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

CLASS ACTION COMPLAINT

Plaintiff Ronald Jantzer ("Plaintiff"), individually, by and through his undersigned counsel, brings this class action lawsuit against Defendants University of Vermont Health Network and Elizabethtown Community Hospital (collectively, "ECH"), on behalf of himself and all others similarly situated, and alleges, based upon information and belief and the investigation of his counsel as follows:

## INTRODUCTION

1.       This is a putative class action lawsuit brought by current and former patients of ECH against Defendants for their failure to properly secure and safeguard the personally identifiable information ("PII") of their patients, and for their failure to provide timely, accurate, and adequate notice that such PII had been compromised.

2.       On October 18, 2018, ECH discovered that one of its employees' email account had been compromised, and as result, the personally identifiable information of 32,000 ECH patients had been illegally exposed. The exposed PII included social security numbers, patients' names, dates of birth, and certain medical information (e.g.  medical record numbers, dates of service, and medical services provided) ("Data Breach").

3.       Although the Data Breach was discovered in October, ECH waited two months before informing affected patients that their PII had been exposed.

4.       This Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect patient PII.

5.       Defendants disregarded the rights of Plaintiff and Class Members by: intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard patient PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiff and Class Members (defined below) prompt and accurate notice of the Data Breach.

6.     As a result of Defendants' failure to implement and follow basic security procedures, patient PII is now in the hands of thieves. Plaintiff and Class Members have had to spend, and will continue to spend, significant amounts of time and money in an effort to protect themselves from the adverse ramifications of the Data Breach and will forever be at a heightened risk of identity theft and fraud.

7.     Plaintiff, on behalf of all others similarly situated, alleges claims for negligence, invasion of privacy, breach of implied contract, unjust enrichment, breach of fiduciary duty, breach of confidence and violation of New York's General Business Law and seeks to compel Defendants to fully and accurately disclose the nature of the information that has been compromised and to adopt reasonably sufficient security practices to safeguard patient PII that remains in their custody in order to prevent incidents like the Data Breach from reoccurring in the future.

## **PARTIES**

8.     Plaintiff Ronald Jantzer is a resident of Elizabethtown, New York and a patient of ECH. On or about December 17, 2018, Mr. Jantzer received notice from ECH that his PII, along with approximately 32,000 other patients, had been improperly exposed to unauthorized third parties. As a result of the Data Breach, Mr. Jantzer will continue to be at heightened risk for financial fraud, medical fraud, and identity theft, and their attendant damages, for years to come.  As a result of the Breach, Mr. Jantzer has spent time monitoring and protecting his financial well-being, by, among other things, corresponding with the major credit bureaus.

9.     Defendant Elizabethtown Community Hospital is a New York corporation headquartered in Elizabethtown New York.  It is part of a larger six-hospital network serving patients and their families in northern New York and Vermont.  It maintains two campuses in New York. Services include: inpatient care, 24-hour emergency department, specialty physician clinics, physical and occupational therapy, laboratory, radiology, chemotherapy and infusion services, and a cardiac rehabilitation program.

10.     Defendant University of Vermont Health Network Inc. is a Vermont Corporation headquartered in Burlington Vermont. It consists of a six-hospital and home health & hospice

system, including ECH, with more than 1,000 physicians, and 2,000 nurses and other clinicians in Vermont and northern New York.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are approximately 32,000 putative class members, and at least some members of the proposed Class have a different citizenship from ECH.

12.     This Court has jurisdiction over Defendants as they operate in this District, and the computer systems implicated in this Breach are likely based in this District.

13.     Plaintiff was a patient of ECH Health and engaged in underlying health services within this District where his PII was also maintained, and where the breach occurred which led to him sustaining damage.  Through its business operations in this District. ECH intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, ECH is based in this District, maintains patient PII in the District, and has caused harm to Plaintiff and Class members residing in this District.

## STATEMENT OF FACTS

### *The ECH Data Breach*

15.     On December 11, 2018, ECH Community Hospital discovered that the PII of 32,000 of its patients was compromised as a result of a successful phishing attack of one or more of its employees.  As a result of the attack, an unauthorized third party acquired credentials that enabled them to remotely access the email account of an ECH employee and thereafter to gain unfettered access to the PII of ECH patients over a period of nine days in October 2018.[1]

---

[1] https://www.hipaajournal.com/up-to-32000-patients-impacted-by-elizabethtown-community-hospital-email-account-breach/ (last visited on June 14, 2019).

CLASS ACTION COMPLAINT

1    16.    The exposed PII include names, addresses, Social Security numbers, dates of birth,

2  driver's license numbers, and medical information such as medical record numbers, dates of service,

3  and summaries of medical services provided.

4    17.    On December 17 ECH issued the following announcement:

**NOTICE REGARDING DATA SECURITY INCIDENT**

**The University of Vermont Health Network – Elizabethtown Community Hospital takes seriously the privacy and confidentiality of our patients' information. Regrettably, this notice is regarding an incident involving some of that information.**

We are notifying individuals potentially affected by a recent data security incident in which, for a brief period of time, an employee's email account was remotely accessed by an unauthorized user. We completed an initial 60-day investigation of the incident and have no evidence of any fraud or identity theft to any individual as a result of this incident.

The incident, which occurred on October 9, 2018, was limited to one employee's email account and did not involve the hospital's computer networks or electronic medical records, nor did it involve the email or information technology systems at any of the Network's other affiliates. Upon learning of the incident on October 18, 2018, we immediately took action, including changing passwords, implementing enhanced security features and engaging a leading forensic security firm to assist with the investigation.

We are very sorry this has happened. We take seriously our responsibility to protect the privacy and confidentiality of the personal information of our patients and employees. To help prevent something like this from happening in the future, we have taken organization-wide steps to enhance the security of our email system, and we are reinforcing education with our staff to assure protection of patients' information.

Although the hospital has no evidence that any personal information was viewed or used by an unauthorized party, as part of the investigation, we searched for any personal information in the email account that may have been viewed.  We determined that the email account contained individuals' personal information, including some individuals' names, dates of birth, addresses and limited medical information; primarily information associated with billing such as medical record numbers, dates of service and a brief summary of services provided.  The account also contained the Social Security numbers of some individuals.

We are notifying the 32,000 potentially affected individuals. The notification will include information on steps individuals can take to protect themselves against potential fraud or identity theft. The 1,200 individuals whose Social Security numbers were included in the email account will be offered free credit

and identity theft monitoring services. We have also set up a dedicated call center for patients and others.

While we haven't determined that any individual record was accessed, we are taking a broad approach in notifying anyone who could possibly be affected by this incident so they can take proactive measures to protect their information. Through our ongoing investigation, it's possible that we'll find that fewer individuals were affected.

If additional information becomes available, it will be posted on this website. Concerned individuals can also reach our call center at 1-877-845-7516 between 9 a.m. and 9 p.m. EST, Monday through Friday.[2]

18.    On the same day, ECH issued letters to affected patients substantially in the form below.

We value and respect the privacy of your information, which is why we are writing to advise you of a recent incident that may have involved certain of your personal information. We recently determined through our investigation of a security incident that, for a brief period of time on October 9, 2018, an unauthorized person was able to remotely access the email account of an employee of ECH Community Hospital. Upon learning of the incident, we immediately took action, including changing passwords, implementing enhanced security features and engaging a leading forensic security firm to assist with the investigation.

At this point, we are not aware of any fraud or identity theft to any individual as a result of this incident, and do not know if any personal information in the email account was ever viewed or acquired by the unauthorized party. Nevertheless, as part of our investigation, we searched for any personal information in the email account that could have been viewed. We completed our investigation on December 11, 2018 and have determined that the account contained some of your personal information, including your name, Social Security number and for some people, address, date of birth, driver's license number and/or limited medical information; primarily information associated with billing such as medical record numbers, dates of service and a brief summary of services provided.

Although we are not aware of any instances of fraud or identity theft, we are offering a complimentary one-year membership of Experian IdentityWorksSM Credit 3B. This product helps detect possible misuse of your personal information and provides you with identity protection services focused on immediate identification and resolution of identity theft.

---

[2] Notice Regarding Data Security Incident, December 17, 2018 available at https://www.ech.org/Data-Security-Incident (last visited June 14, 2019).

CLASS ACTION COMPLAINT

IdentityWorks Credit 3B is completely free to you and enrolling in this program will not hurt your credit score. For more information on identity theft prevention and IdentityWorks Credit 3B, including instructions on how to activate your complimentary one-year membership, please see the additional information provided
in this letter.

We take our responsibility to safeguard personal information seriously and apologize for any inconvenience or concern this incident might cause. We will continue to remain on our guard against these types of attacks, to protect the safety of our patients and employees, and the security of their information. For further information and assistance, please call 877-845-7516 from 9:00 a.m. to 9:00 p.m. ET.[3]

### *Prevalence of Cyber Attacks and Particular Susceptibility of Hospital Systems*

19.     Cyber attacks come in many forms. Phishing attacks are among the oldest, most common, and well-known.  In simple terms, phishing is a method of obtaining personal information using deceptive e-mails and websites. The goal is to trick an e-mail recipient into believing that the message is something they want or need from a legitimate or trustworthy source and to subsequently click on link or download an attachment. The fake link will typically mimic a familiar website and require the input of credentials. Once input, the credentials are then used to gain unauthorized access into a system.  "It's one of the oldest types of cyber attacks, dating back to the 1990s" and one that "every organization with an internet presence is aware."[4]

20.     Phishing attacks are well-known and understood by the cyber-protection community and there are many well-known proactive measures that can be undertaken to prevent phishing attacks such as "sandboxing" inbound e-mail[5], inspecting and analyzing web traffic, penetration

---

[3] Letter to The Honorable Gordon MacDonald Attorney General of the State of New Hampshire on behalf of University of Vermont Health Network – Elizabethtown Community Hospital, December 17, 2018 available at https://www.doj.nh.gov/consumer/security-breaches/documents/elizabethtown-hospital-20181217.pdf (last visited June 14, 2019). Plaintiff Jantzer received a similar letter dated December 17, 2018, attached hereto as Exhibit A.

[4] https://www.csoonline.com/article/2117843/phishing/what-is-phishing-how-this-cyber-attack-works-and-how-to-prevent-it.html. (last visited February 11, 2019)

[5] An automated process whereby e-mails with attachments and links are segregated to an isolated test environment, a "sandbox," wherein a suspicious file or URL may be executed safely.

CLASS ACTION COMPLAINT

testing an organization to find weak spots, and employee education, among many others.[6]

21.    Data breaches, including those perpetrated by phishing attacks, have become widespread. In 2016, the number of U.S. data breaches surpassed 1,000, a record high and a forty percent increase in the number of data breaches from the previous year.[7]  In 2017 a new record high of 1,579 breaches were reported representing a 44.7 percent increase over 2016.[8] The Healthcare sector had the second largest number of breaches among all measured sectors and the highest rate of exposure per breach.[9]

22.    Indeed, healthcare related data is among the most sensitive, and personally consequential when compromised. A report focusing on health-care breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were forced to pay out-of-pocket costs for health care they did not receive in order to restore coverage.[10]  Almost 50 percent of the victims lost their health care coverage as a result of the incident, while nearly one-third said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.[11]

---

[6] https://www.csoonline.com/article/2117843/phishing/what-is-phishing-how-this-cyber-attack-works-and-how-to-prevent-it.html. (last visited February 11, 2019)

[7] Identity Theft Resource Center, *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout* (Jan. 19, 2017), *available at* https://www.idtheftcenter.org/surveys-studys/ (last visited January 23, 2019).

[8] Identity Theft Resource Center, 2017 Annual Data Breach Year-End Review, available at https://www.idtheftcenter.org/2017-data-breaches/ (last visited January 23, 2019).

[9] Identity Theft Resource Center, 2018 End -of-Year Data Breach Report. Available at https://www.idtheftcenter.org/2018-data-breaches/ (last visited April 19, 2019).

[10] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited April 21, 2019)

[11] *Id.*

---

CLASS ACTION COMPLAINT

23. Hospital data breaches in specific have continued to rapidly increase. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the last 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[12]

24. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information (PII) for thousands of patients at any given time. From social security and insurance policies to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers. This is perhaps the main reason why the average cost of a cyber data breach for hospitals is almost $400 per medical record."[13]

25. ECH knew the importance of safeguarding patient PII entrusted to it and of the foreseeable consequences if its data security systems were breached, including the significant costs that would be imposed on its patients as a result of a breach, yet failed to take adequate cyber-security measures.

### *Defendants Acquire, Collect, and Store Plaintiff's and Class Members' PII*

26. Defendants acquire, collect, store, and maintain a massive amount of protected health related information and other personally identifiable data on its patients.

27. As a condition of engaging in health services, ECH requires that their customers entrust them with highly sensitive personal information.

28. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the Class Members' PII, ECH assumed legal and equitable duties to those individuals and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure.

---

[12] https://www.himss.org/2019-himss-cybersecurity-survey (last visited June 14, 2019).

[13] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited June 14, 2019).

CLASS ACTION COMPLAINT

29.    Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and the Class Members, as current and former patients, relied on the Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

30.    Indeed, ECH maintains a Privacy Policy which specifically acknowledges its legal obligation to maintain the privacy of patient PII entrusted to it.

> The University of Vermont Health Network is committed to honoring the trust that patients place in us when sharing their health information. The University of Vermont Health Network entities are required to maintain the privacy of your health information and are committed to doing so.
>
> OUR RESPONSIBILITIES
>
> • We are required by law to maintain the privacy and security of your protected health information.
>
> • We will notify you if a breach occurs that may have compromised the privacy or security of your information.
>
> • We must follow the duties and privacy practices described in this notice and provide you a copy upon your request.
>
> • We will not use or share your information other than as described here unless you tell us in writing that we can. If you tell us we can share your information, you may change your mind at any time and withdraw your permission in writing, except to the extent that our providers have already acted upon your previously provided permission.[14]

**_ECH's Inadequate Cyber-Security Practices_**

31.    "Email phishing remains the primary attack vector for nine out of 10 cyberattacks," and is well-known in the cyber-security community.[15] Indeed, ECH could have employed numerous and effective countermeasures to prevent such an attack.

---

[14] https://www.ech.org/data/files/Notice_of_Privacy_Practices_2018.pdf

[15] https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks

CLASS ACTION COMPLAINT

32.     Generally, organizations can mount two primary defenses to phishing scams: employee education and technical security barriers.

33.     Employee education is the process of adequately making employees aware of common phishing scams and implementing company-wide policies requiring unknown links, attachments, or requests to be sequestered and checked for authenticity. Employee education and established protocols for use of log-in credentials is the easiest method to assist employees in properly identifying fraudulent e-mails and prevent unauthorized access to personal information.

34.     Organizations like ECH can also greatly reduce the flow of phishing e-mails by implementing certain security measures governing e-mail transmissions. For example, organizations can use a simple e-mail validation system that allows domain owners to publish a list of IP addresses that are authorized to send e-mail on their behalf to reduce the amount of spam and fraud by making it much harder for malicious senders to disguise their identities. Organizations can also use e-mail authentication protocols that block e-mail streams which have not been properly authenticated.

35.     Unfortunately, ECH failed to employ any of these defenses to the detriment of Plaintiff and hundreds of thousands of Class members. As evidenced by the success of the phishing hack, it is clear that ECH failed to ensure that its employees were adequately trained on even the most basic of cybersecurity protocols, including:

a. How to detect phishing e-mails and other scams including providing employees examples of these scams and guidance on how to verify if e-mails are legitimate;

b. Effective password management and encryption protocols for internal and external e-mails;

c. Avoid responding to e-mails that are suspicious or from unknown sources;

d. Locking, encrypting and limiting access to computers and files containing sensitive information; and

e. Implementing guidelines for maintaining sensitive data.

36.     ECH's failures handed criminals patient PII and put Plaintiff and members of the Class at serious, immediate and ongoing risk for identity theft and fraud.

37.     The Data Breach was caused by ECH's failure to abide by best practices and industry standards concerning the security of its computer systems.  ECH did not comply with security standards and allowed its patients' PII to be compromised by failing to implement security measures that could have prevented or mitigated the Data Breach.

38.     ECH failed to ensure that all its personnel with access to patient records were made aware of this well-known and well-publicized type of scam.

39.     In addition, upon information and belief, ECH failed to take reasonable steps to clearly, conspicuously, and timely inform Plaintiff and the other Class members of the nature and extent of the Data Breach.  By failing to provide adequate and timely notice, ECH prevented Plaintiff and Class members from protecting themselves from the consequences of the Data Breach.

***Value of Personally Identifiable Information***

40.     ECH was well-aware that the PII it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

41.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[16]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[17]

42.     Personal identifying information is a valuable commodity to identity thieves once the information has been compromised.  As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts,

---

[16] 17 C.F.R § 248.201 (2013).

[17] *Id.*

or get medical treatment on your health insurance."[18]

43.    Identity thieves can use personal information, such as that of Plaintiff and Class members, which ECH failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

44.    A "cyber black market" exists in which criminals openly post stolen social security numbers and other personal information on multiple underground Internet websites. Such data is valuable to identity thieves because they can use victims' personal data to open new financial accounts, take out loans in another person's name and/or incur charges on existing accounts as well as conduct an array of medical fraud.

45.    Professionals tasked with trying to stop fraud and other misuse know that PII has real monetary value in part because criminals continue their efforts to obtain this data.[19] In other words, if any additional breach of sensitive data did not have incremental value to criminals, one would expect to see a reduction in criminal efforts to obtain such additional data over time. However, just the opposite has occurred. According to the Identity Theft Resource Center, 2017 saw 1,579 data breaches, representing a 44.7 percent increase over the record high figures reported a year earlier.[20]

46.    At all relevant times, ECH knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data

---

[18] Federal Trade Commission, *Warning Signs of Identity Theft*, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited January 23, 2019).

[19] *Data Breaches Rise as Cybercriminals Continue to Outwit IT*, *CIO Magazine*, https://www.cio.com/article/2686167/data-breach/data-breaches-rise-as-cybercriminals-continue-to-outwit-it.html (last visited January 23, 2019).

[20] *2017 Annual Data Breach Year-End Review,* https://www.idtheftcenter.org/2017-data-breaches, (last visited January 23, 2019).

---

CLASS ACTION COMPLAINT

1    security system was breached, including, the significant costs that would be imposed on its patients

2    as a result of a breach.

3    ***The Effects of Unauthorized Disclosure of PII***

4    47.    The ramifications of the ECH's failure to keep its patients' PII secure are long lasting

5    and severe.  Once PII is stolen, fraudulent use of that information and damage to victims may

6    continue for years.

7    48.    Social Security numbers, for example, are among the worst kind of personal

8    information to have stolen because they may be put to a variety of fraudulent uses and are difficult

9    for an individual to change. The Social Security Administration has warned that identity thieves can

10    use an individual's Social Security number to apply for additional credit lines. Such fraud may go

11    undetected until debt collection calls commence months, or even years, later.

12    49.    Stolen Social Security numbers also make it possible for thieves to file fraudulent tax

13    returns, file for unemployment benefits, or apply for a job using a false identity. Each of these

14    fraudulent activities is difficult to detect. An individual may not know that his or her Social Security

15    number was used to file for unemployment benefits until law enforcement notifies the individual's

16    employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an

17    individual's authentic tax return is rejected.

18    50.    Moreover, it is no easy task to change or cancel a stolen Social Security number. An

19    individual cannot obtain a new Social Security number without significant paperwork and evidence

20    of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit

21    bureaus and banks are able to link the new number very quickly to the old number, so all of that old

22    bad information is quickly inherited into the new Social Security number."[21]

23    51.    Additionally, the information compromised in the Data Breach is significantly more

24    valuable than the mere loss of credit card information typical of recent large retailer data breaches.

25    _____

26    [21] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Brian Naylor, Feb.

27    9, 2015, *available at* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited February 13, 2019).

28

1    Victims affected by those retailer breaches could avoid much of the potential future harm by

2    cancelling credit or debit cards and obtaining replacements. The PII compromised in the ECH's Data

3    Breach is difficult, if not impossible, to change (i.e. Social Security numbers, names, addresses,

4    dates of birth and medical records).

5        52.    This data, as one would expect, demands a much higher price on the black market.

6    Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card

7    information, personally identifiable information and Social Security numbers are worth more than

8    10x on the black market."[22]

9    53.    ***Defendants' Conduct Violate HIPAA and Industry Standard Practices***

10        54.    Title II of HIPAA contains what are known as the Administrative Simplification

11    provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the

12    Department of Health and Human Services ("HHS") create rules to streamline the standards for

13    handling PII like the data Defendants left unguarded. The HHS has subsequently promulgated five

14    rules under authority of the Administrative Simplification provisions of HIPAA.

15        55.    Defendants' Breach resulted from a combination of insufficiencies that indicate

16    Defendants failed to comply with safeguards mandated by HIPAA regulations and industry

17    standards. ECH's security failures include, but are not limited to:

18                a.    Failing to maintain an adequate data security system to prevent data loss;

19                b.    Failing to mitigate the risks of a data breach and loss of data;

20                c.    Failing to adequately catalog the location of patients/customers', including

21                      Plaintiff's and Class Members', digital information;

22                d.    Failing to properly encrypt Plaintiff's and Class Members' PII;

23

24

_____

25    [22] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World,
26    Tim Greene, Feb. 6, 2015, *available at* http://www.itworld.com/article/2880960/anthem-hack-
      personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited February
27    13, 2019).

28

e.  Failing to ensure the confidentiality and integrity of electronic protected health information Defendants create, receive, maintain, and transmit in violation of 45 CFR 164.306(a)(1);

f.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

g.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

h.  Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

i.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2); Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

j.  Failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 CFR 164.306(a)(94);

k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*;

l.  Failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of

CLASS ACTION COMPLAINT

protected health information in violation of 45 CFR 164.530(b) and 45 CFR

164.308(a)(5); and

m. Failing to design, implement, and enforce policies and procedures establishing

physical and administrative safeguards to reasonably safeguard protected

health information, in compliance with 45 CFR 164.530(c).

***Plaintiff and Class Members Suffered Damages***

56.    The ramifications of Defendants' failure to keep Patients' PII secure are long lasting

and severe.  Once PII is stolen, fraudulent use of that information and damage to victims may

continue for years.

57.    The PII belonging to Plaintiff and Class Members is private, sensitive in nature, and

was left inadequately protected by Defendants who did not obtain Plaintiff's or Class Members'

consent to disclose such PII to any other person as required by applicable law and industry

standards.

58.    The Data Breach was a direct and proximate result of ECH's failure to: (a) properly

safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and

disclosure, as required by various state and federal regulations, industry practices, and common law;

(b) establish and implement appropriate administrative, technical, and physical safeguards to ensure

the security and confidentiality of Plaintiff's and Class Members' PII; and (c) protect against

reasonably foreseeable threats to the security or integrity of such information.

59.    Defendants had the resources necessary to prevent the Breach, but neglected to

adequately invest in data security measures, despite their obligations to protect Patient data.

60.    Had Defendants remedied the deficiencies in its data security systems and adopted

security measures recommended by experts in the field, they would have prevented the intrusions

into their systems and, ultimately, the theft of PII.

61.    As a direct and proximate result of Defendants' wrongful actions and inaction,

Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased

risk of harm from identity theft and fraud, requiring them to take the time which they otherwise

would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives. The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[23]

62.    To date, ECH has offered patients only a 1-year membership in IdentityWorks protection services, and then only to select patients.[24]  Notwithstanding the fact it is not being offered to everyone whose PII was compromised, the offer is wholly inadequate. As discussed above, victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft. Moreover, Defendants' offer does not address any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII, including their health-related information.

63.    Furthermore, Defendants' credit monitoring offer to Plaintiff and Class Members squarely places the burden on Plaintiff and Class Members, rather than on the Defendants, to investigate and protect themselves from Defendants' tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff and Class Members in credit monitoring services upon discovery of the breach, Defendants merely sent instructions "offering" the services to affected patients recommending they sign up for the services.

64.    As a result of the Defendants' failures to prevent the Data Breach, Plaintiffs and Class Members have suffered, will suffer, or are at increased risk of suffering:

        a.    The compromise, publication, theft, and/or unauthorized use of their PII;

---

[23] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013 available at https://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited April 19,2019).

[24] *See* Exhibit A. ("As an additional precaution, to reduce the risk of fraud or identity theft, we are offering a one-year membership in Experian's IdentityWorks at no cost to you.").

b. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

c. Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

d. The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake appropriate measures to protect the PII in their possession; and

e. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

65.    In addition to a remedy for the economic harm, Plaintiff and the Class maintain an undeniable interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

## CLASS ACTION ALLEGATIONS

66.    Plaintiff seeks relief on behalf of himself and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:

All persons whose PII was compromised as a result of the Data Breach announced by ECH on or about December 17, 2018 (the "Class").

67.    Excluded from the Class are ECH and any of its affiliates, parents, or subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

68.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

69.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3), and (c)(4).

70.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  The Data Breach implicates at least 32,000 current and former ECH patients. ECH has physical and email addresses for Class members who therefore may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

71.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a.  Whether ECH had a duty to protect patient PII;

b.  Whether ECH knew or should have known of the susceptibility of its systems to a data breach;

c.  Whether ECH's security measures to protect their systems were reasonable in light of best practices recommended by data security experts;

d.  Whether ECH was negligent in failing to implement reasonable and adequate security procedures and practices;

e.  Whether ECH's failure to implement adequate data security measures allowed the breach of its data systems to occur;

f.  Whether ECH's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unlawful exposure of the Plaintiff's and Class Members' PII;

g.  Whether Plaintiff and Class Members were injured and suffered damages or other losses because of ECH's failure to reasonably protect its systems and data network; and,

CLASS ACTION COMPLAINT

h.   Whether Plaintiff and Class members are entitled to relief.

72.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of other Class members.  Plaintiff is an ECH patient whose PII was exposed in the Data Breach. Plaintiff's damages and injuries are akin to other Class Members, and Plaintiff seeks relief consistent with the relief sought by the Class.

73.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class he seeks to represent; is committed to pursuing this matter against ECH to obtain relief for the Class; and has no conflicts of interest with the Class. Moreover, Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation of this kind. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

74.    **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against ECH, and thus, individual litigation to redress ECH's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

75.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds

generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

76.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

        a.  Whether ECH failed to timely notify the public of the Data Breach;

        b.  Whether ECH owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

        c.  Whether ECH's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

        d.  Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

        e.  Whether Defendants failed to take commercially reasonable steps to safeguard patient PII; and

        f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach.

77.    Finally, all members of the proposed Classes are readily ascertainable. ECH has access to patient names and addresses affected by the Data Breach. Using this information, Class members can be identified and ascertained for the purpose of providing notice.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

78.    Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.    As a condition of receiving services, Plaintiff and Class Members were obligated to provide ECH, through their respective insurance carriers, with their PII.

80.     Plaintiff and the Class Members entrusted their PII to ECH with the understanding that ECH would safeguard their information.

81.     Defendants had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

82.     Defendants had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.  This duty includes, among other things, designing, maintaining and testing the Defendants' security protocols to ensure that Plaintiff's and Class Members' information in its possession was adequately secured and protected and that employees tasked with maintaining such information were adequately training on cyber security measures regarding the security of patient information.

83.     Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew of or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, the current cyber scams being perpetrated and that it had inadequate employee training and education and IT security protocols in place to secure the PII of Plaintiff and the Class.

84.     Defendants' own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendants' misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included its decision not to comply with industry standards for the safekeeping and encrypted authorized disclosure of the PII of Plaintiff and Class Members.

85.     Plaintiff and the Class Members had no ability to protect their PII that was in ECH's possession.

86.     Defendants were in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

87.     Defendants had a duty to have proper procedures in place to prevent the unauthorized dissemination Plaintiff and Class Members' PII.

88.     Defendants have admitted that Plaintiff's and Class Members' PII was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

89.     Defendants, through their actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding the Plaintiff's and Class Members' PII while it was within the ECH's possession or control.

90.     Defendants improperly and inadequately safeguarded Plaintiff's and Class Members' PII in deviation of standard industry rules, regulations and practices at the time of the Data Breach.

91.     Defendants, through their actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its patients' PII.

92.     Defendants, through their actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and Class Members the existence, and scope of the Data Breach.

93.     But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' PII would not have been compromised.

94.     There is a temporal and close causal connection between Defendants' failure to implement security measures to protect the PII of current and former patients and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class.

95.     As a result of  Defendants' negligence, Plaintiff and the Class Members have suffered and will continue to suffer damages and injury including, but not limited to: out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, the costs associated therewith; time spent monitoring, addressing  and correcting the current and future consequences of the Data Breach; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

## SECOND CAUSE OF ACTION
## INVASION OF PRIVACY

96.     Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

97.     Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

98.     Defendants owed a duty to patients in their network, including Plaintiff and Class Members, to keep their PII contained as a part thereof, confidential.

99.     The unauthorized release of PII, especially the type related to personal health information, is highly offensive to a reasonable person.

100.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to Defendants as part of their use of Defendants' services, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

101.    The Data Breach at the hands of Defendants constitutes an intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

102.    Defendants acted with a knowing state of mind when they permitted the Data Breach because they were with actual knowledge that their information security practices were inadequate and insufficient.

103.    Because Defendants acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

104.    As a proximate result of Defendants' acts and omissions, Plaintiff's and Class Members' PII was disclosed to and used by third parties without authorization, causing Plaintiff and Class Members to suffer damages.

105.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by Defendants can be viewed, distributed, and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**

106.    Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

107.    Plaintiff and Class Members were required to provide their PII, including names, addresses, dates of birth, social security numbers, and various health related information to Defendants as a condition of their use of Defendants' services.

108.    Plaintiff and Class Members paid money to Defendants in exchange for services, as well as Defendants' promises to protect their protected health information and other PII from unauthorized disclosure.

109.    In their written privacy policies, ECH expressly promised Plaintiff and Class Members that they would only disclose protected health information and other PII under certain circumstances, none of which relate to the Data Breach.

110.    ECH promised to comply with HIPAA standards and to make sure that Plaintiff's and Class Members' protected health information and other PII would remain protected.

111.    Implicit in the agreement between the Defendants' patients, including Plaintiff and Class Members, to provide protected health information and other PII, and Defendants' acceptance of such protected health information and other PII, was Defendants' obligation to use the PII of their patients for business purposes only, take reasonable steps to secure and safeguard that protected health information and other PII, and not make unauthorized disclosures of the protected health information and other PII to unauthorized third parties.

112.    Further, implicit in the agreement, Defendants were obligated to provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their protected health information and other PII.

113.    Without such implied contracts, Plaintiff and Class Members would not have provided their protected health information and other PII to Defendants.

114.    Defendants had an implied duty to reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses.

115.    Additionally, Defendants implicitly promised to retain this PII only under conditions that kept such information secure and confidential.

116.    Plaintiff and Class Members fully performed their obligations under the implied contract with Defendants, however, Defendants did not.

117.    Defendants breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' PII, which was compromised as a result of the Data Breach.

118.    Defendants further breached the implied contracts with Plaintiff and Class Members by failing to comply with their promise to abide by HIPAA.

119.    Defendants further breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendants created, received, maintained, and transmitted in violation of 45 CFR 164.306(a)(1).

120.    Defendants further breached the implied contracts with Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1).

121.    Defendants further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1).

122.    Defendants further breached the implied contracts with Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii).

123.    Finally, Defendants also breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2).

## FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

124.    Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

125.    Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they purchased goods and services from Defendants and in so doing provided Defendants with their PII. In exchange, Plaintiff and Class Members should have received from Defendants the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

126.    Defendants knew that Plaintiff and Class Members conferred a benefit on Defendants and accepted and have accepted or retained that benefit. Defendants profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

127.    The amounts Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendants' network and the administrative costs of data management and security.

128.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

129.    Defendants failed to secure Plaintiff's and Class Members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

130.    Defendants acquired the PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

131.    If Plaintiff and Class Members knew that Defendants would not secure its PII using adequate security measures, they would not have engaged in transactions with Defendants.

132.    Plaintiff and Class Members have no adequate remedy at law.

133.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of patients and in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendants' services they received.

134.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

135.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendants' services.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

136.    Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

137.    In light of the special relationship between Defendants and their Patients, whereby Defendants became guardians of Plaintiff's and Class Members' highly sensitive, confidential, personal, financial information, and other PII, Defendants became fiduciaries created by their undertakings and guardianship of the PII, to act primarily for the benefit of its patients, including Plaintiff and Class Members, for: 1) the safeguarding of Plaintiff and Class Members' PII; 2) timely notify Plaintiff and Class Members' of a data breach or disclosure; and 3) maintain complete and accurate records of what and where Defendants' patients' information was and is stored.

138.    Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its patients' relationship, in particular to keep secure the PII of its patients.

139.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to diligently investigate the Data Breach to determine the number of Class Members affected in a reasonable and practicable period of time.

140.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the system containing Plaintiff's and Class Members' protected health information and other PII.

141.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

142.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendants created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

143.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain

electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1).

144.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

145.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii).

146.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2).

147.    Defendant breached their fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3).

148.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by their workforce in violation of 45 CFR 164.306(a)(94).

149.    Defendants breached their fiduciary duties to Plaintiff and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, et seq.

150.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 CFR 164.530(b) and 45 CFR 164.308(a)(5).

151.     Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR 164.530(c).

152.     Defendants breached their fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PII.

153.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Patient PII in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendants' services they received.

154.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## SIXTH CAUSE OF ACTION
## BREACH OF CONFIDENCE

155.     Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

156.    At all times during Plaintiff's and Class Members' interactions with Defendants, Defendants were fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' protected health information and other PII that Plaintiff and Class Members provided to Defendants.

157.    As alleged herein and above, Defendants' relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' protected health information and other PII would be collected, stored, and protected in confidence, and would not be disclosed the unauthorized third parties.

158.    Plaintiff and Class Members provided their respective protected health information and PII to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the protected health information and other PII to be disseminated to any unauthorized parties.

159.    Plaintiff and Class Members also provided their respective protected health information and PII to Defendants with the explicit and implicit understandings that Defendants would take precautions to protect that protected health information and other PII from unauthorized disclosure, such as following basic principles of encryption and information security practices.

160.    Defendants voluntarily received in confidence Plaintiff's and Class Members' protected health information and other PII with the understanding that protected health information and other PII would not be disclosed or disseminated to the public or any unauthorized third parties.

161.    Due to Defendants' failure to prevent, detect, and avoid the Data Breach from occurring by, *inter alia*, following best information security practices to secure Plaintiff's and Class Members' protected health information and other PII, Plaintiff's and Class Members' protected health information and PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

162.    As a direct and proximate cause of Defendants' actions and/or omissions, Plaintiff and Class Members have suffered damages.

CLASS ACTION COMPLAINT

163.    But for Defendants' disclosure of Plaintiff's and Class Members' protected health information and other PII in violation of the parties' understanding of confidence, their protected health information and other PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendants' Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' protected health information and other PII, as well as the resulting damages.

164.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendants' unauthorized disclosure of Plaintiff's and Class Members' protected health information and other PII. Defendants knew their computer systems and technologies for accepting and securing Plaintiff's and Class Members' protected health information and other PII had numerous security vulnerabilities because Defendants failed to observe even basic security practices necessary to prevent fraudulent provider accounts from being created.

165.    As a direct and proximate result of Defendants' breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover identity theft; (vi) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Patient PII in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendants' goods and services they received.

CLASS ACTION COMPLAINT

166.    As a direct and proximate result of Defendants' breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**SEVENTH CAUSE OF ACTION**
**NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law §§ 349,** *et seq.*

167.    Plaintiff restates and realleges paragraphs 1 through 77 above as if fully set forth herein.

168.    ECH operating in New York engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

    a.    Misrepresenting and fraudulently advertising material facts, pertaining to the sale and/or furnishing of its goods and services by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

    b.    Misrepresenting material facts, pertaining to the sale and/or furnishing of its goods and services by representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of PII;

    c.    Omitting, suppressing, and concealing the material fact of the inadequacy of its privacy and security protections for Class Members' PII;

    d.    Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Class Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach.;

    e.    Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to Class Members in a timely and accurate

manner, contrary to the duties imposed by N.Y. Gen. Bus. Law § 899-aa(2); and,

     f.   Engaging in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Class Members' PII from further unauthorized disclosure, release, data breaches, and theft.

169.   As a direct and proximate result of ECH's deceptive trade practices, Class Members suffered injury and/or damages, including the loss of their legally protected interest in the confidentiality and privacy of their personal information.

170.   The above unfair and deceptive practices and acts by ECH were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

171.   ECH knew or should have known that its computer systems and data security practices were inadequate to safeguard Class Members' PII and that risk of a data breach or theft was high.

172.   ECH's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

173.   Plaintiff and Class Members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

     a.   An Order certifying this case as a class action;

     b.   An Order appointing Plaintiff as the class representative;

     c.   An Order appointing undersigned counsel as class counsel;

d.   A mandatory injunction directing the Defendants to hereinafter adequately
safeguard the PII of the Class by implementing improved security procedures
and measures;

e.   An award of damages;

f.   An award of costs and expenses;

g.   An award of attorneys' fees; and

h.   Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to all issues triable by a jury.        .

Dated: July 2, 2019                    **GLANCY PRONGAY & MURRAY LLP**


By: _/s/  Brian P. Murray_____
Brian P. Murray
bmurray@glancylaw.com
230 Park Avenue, Suite 530
New York, NY 10169
Telephone: (212) 682-5340

**LAW OFFICE OF PAUL C. WHALEN, P.C.**
Paul C. Whalen
paul@paulwhalen.com
768 Plandome Road
Manhasset, NY  11030
Telephone: (516) 426-6870

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
Jean Sutton Martin
jeanmartin@forthepeople.com
2018 Eastwood Road, Ste. 225
Wilmington, NC 28403
Telephone:  (813) 559-4908

John A. Yanchunis
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505